## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ASIA G. SMITH,<br><br>     Plaintiff,<br><br>                 v.<br><br>JASON L. ALLEN, individually,<br><br>     Defendant. | Civil Action No.<br>1:19-cv-01427-SDG |

### ORDER

This matter is before the Court on Defendant Jason L. Allen's motion to dismiss Plaintiff Asia G. Smith's Amended Complaint [ECF 7]. For the following reasons, Allen's motion is **DENIED**.

## I.    BACKGROUND

The following facts are treated as true for purposes of this motion.[1] On May 1, 2018, Gwinnett County police officer Wendy Downing was dispatched to a Target store in Buford, Georgia to investigate a theft.[2] Target's store manager reported to Downing that on April 11, 2018, a woman entered the store, purchased

---

[1]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]    ECF 5, ¶ 9.

a drone, and exited the store, leaving in a white Chrysler 300.[3] Within the hour, the same woman returned to the Target and received a cash refund for the drone.[4] Unbeknownst to Target's employees, the drone had been removed and replaced with miscellaneous parts.[5] Downing received camera footage of the female leaving the store and forwarded the footage, along with an incident report, to the Gwinnett County criminal investigations unit.[6] Allen, a Gwinnett County police officer, was assigned to the investigation.[7]

Upon receiving the case, Allen viewed the video surveillance footage, still pictures of the unidentified woman, transaction receipts, and Target's internal incident report.[8] Allen checked the white Chrysler 300's license plate number and discovered its registered owner was Ismail Muttalib.[9] Allen ran Muttalib's name through various databases and discovered Muttalib had several active warrants

---

[3]   *Id.* ¶ 10.

[4]   *Id.*

[5]   *Id.*

[6]   *Id.*

[7]   *Id.* ¶ 11.

[8]   *Id.* ¶ 12.

[9]   *Id.* ¶ 13.

involving thefts.[10] Allen then generated a report for Muttalib on a database known as CLEAR, a Thomson Reuters investigative product, and viewed Muttalib's known associates.[11] One of the identified known associates was "Asia Smith."[12] Allen then performed a generic, worldwide search on Facebook for the name "Asia Smith."[13] Allen located the Facebook profile of a woman he believed looked similar to the woman in the surveillance footage and photos based on the woman's skin and facial features—Plaintiff Asia G. Smith.[14] Allen then linked the Facebook profile to a related Instagram account and located Plaintiff's driver's license.[15] Allen attempted to call Plaintiff through the number listed on her driver's license, but did not receive an answer.[16] On May 3, 2018, Allen submitted an affidavit for Plaintiff's arrest for the offense of theft by deception and received the warrant that same day.[17]

---

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 14. "Asia Smith" is the seventh name out of eleven in the CLEAR report listing Muttalib's known associates. ECF 5-2, at 21.

[13] ECF 5, ¶14.

[14] *Id.*

[15] *Id.*

[16] ECF 7, at 9.

[17] *Id.* ¶¶ 13–15.

On July 21, 2018, Plaintiff was arrested and, after posting bond, released from the Gwinnett County jail on July 23, 2018.[18] Following her arrest, Allen realized that Plaintiff was wrongly identified.[19] As it turned out, Plaintiff was a college student at Clayton State University enrolled in the criminal justice program with no criminal record who had never visited the Target store in Buford and had no connection with Muttalib or the white Chrysler 300.[20] Muttalib's listed known associate—Asia A. Smith—was his sister who had died on October 5, 2017, seven months before the theft at issue.[21] The charges against Plaintiff, Asia G. Smith, were subsequently dismissed on October 25, 2018.[22]

Plaintiff initiated this action on March 29, 2019, asserting a claim under 42 U.S.C. § 1983, seeking attorney's fees and punitive damages, against Allen individually.[23] On June 20, 2019, Plaintiff filed a First Amended Complaint.[24] Allen

---

[18]   *Id.* ¶ 16.

[19]   *Id.* ¶ 18.

[20]   *Id.* ¶ 18.

[21]   *Id.* ¶ 21–23.

[22]   *Id.* ¶ 17.

[23]   ECF 1.

[24]   ECF 5, ¶¶ 33–46.

filed the instant motion to dismiss on July 3, 2019.[25] Plaintiff filed her response on July 17, 2019.[26] Allen replied on July 31, 2019.[27]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th 2010) (*quoting Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (*citing Twombly*, 550 U.S. at 556).

---

25   ECF 7.

26   ECF 9.

27   ECF 10.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (*quoting Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (*quoting Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 itself creates no substantive rights. *Baker v. McCollan*, 443 U.S. 137, 140, 144 n.3 (1979). Rather, it provides a "method for vindicating federal rights

elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Id*. To succeed on a Section 1983 claim, a plaintiff "must prove that she was deprived of a constitutionally guaranteed right under color of state law." *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir. 1989).

There is no dispute that Allen, as a Gwinnett County police officer, acted under color of state law.[28] Rather, the issue is whether Plaintiff has adequately pled that Allen's conduct deprived her of a constitutional right. *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### a.   *Kingsland v. City of Miami* Does Not Bar Plaintiff's Amended Complaint.

Allen contends the Eleventh Circuit's decision in *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004) supports dismissal at this stage because the ruling "casts into stark contrast the difference between a situation when a motion to dismiss is not appropriate as compared to a case where granting such motion is the proper course."[29] According to Allen, *Kingsland* compels dismissal of Plaintiff's Amended Complaint, without affording her an opportunity to discover and present evidence, because the "purely legal question revolves around whether or

---

28   ECF 5, ¶ 4.

29   ECF 7-1, at 6.

not Plaintiff can prove that Detective Allen sought a warrant on selective facts only without reasonably looking for other easily obtainable facts as part of his investigation."[30]

In *Kingsland*, the Eleventh Circuit held that the officers were not entitled to dismissal based on qualified immunity at the summary judgment stage. *Id.* at 1223–25. In finding the officers' investigation there constitutionally deficient, the Eleventh Circuit held that "officers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Id.* at 1228. Further, an officer cannot "conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts." *Id.* at 1229. While an officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest . . . an officer may not choose to ignore information that has been offered to him or her." *Id.* The court concluded that a jury could find that the officers' "investigation was deficient in that the officers consciously and deliberately did not make an effort to uncover reasonably discoverable, material information," and an issue of fact remained as to whether the officers "fabricated or unreasonably disregarded

---

[30]   *Id.* at 10.

certain pieces of evidence to establish probable cause." *Id.* at 1230, 1233. *See also Tillman*, 886 F.2d at 321 (officer "was not required to investigate every claim of innocence raised by [plaintiff]; but he was required to investigate his own serious doubts regarding the suspect's identity to satisfy the probable cause requirement of the Fourth Amendment in obtaining the arrest warrant").

Despite Allen's efforts to contrast the facts presented in *Kingsland* with Plaintiff's allegations, nothing in the Eleventh Circuit's decision *in favor of* the Section 1983 plaintiff at the *summary judgment stage*, *i.e.*, after the collection and presentation of evidence, requires dismissal of Plaintiff's Amended Complaint here at the motion to dismiss stage. Allen's brief concedes as much, but nonetheless proceeds to make arguments more suitable for summary judgment.

For example, Allen argues the CLEAR investigative report for "Ismail Muttalib," attached to the Amended Complaint, does not reflect "what [Allen] knew in May 2018 or at the time of his report," and that "there is simply *no evidence*" supporting Plaintiff's claim.[31] Allen's argument is unpersuasive in adjudicating a motion to dismiss. Neither Plaintiff nor the Court can ascertain at this preliminary stage (a) what Allen knew in May 2018; (b) the contents of the

---

[31]   ECF 7-1, at 12 (emphasis added).

2018 CLEAR report Allen generated and reviewed (as opposed to the 2019 version attached to the Amended Complaint); (c) when Allen learned that the "Asia Smith" listed on the report had died seven months before the theft; d) to what extent the information listed for "Asia Smith" on the CLEAR report matched the information Allen knew about Plaintiff; and (e) whether Allen intentionally or recklessly failed to include contradictory or exculpatory information concerning Plaintiff's identity in the application for an arrest warrant. Contrary to Allen's characterizations, the Eleventh Circuit in *Kingsland* did not bar a Section 1983 plaintiff from obtaining discovery or draw a bright-line rule as to "what is required to demonstrate a constitutional[ly] deficient investigation."[32] Thus, *Kingsland* does not act as a *de-facto* bar to Plaintiff's well-pled allegations.

### b. Plaintiff's Claim Is Not Barred by Qualified Immunity at this Stage.

Allen also invokes the doctrine of qualified immunity as a basis for dismissing the Amended Complaint. Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should

---

[32]   *Id*. at 10.

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The qualified immunity analysis involves a two-pronged approach. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court must determine (1) if there was a constitutional violation; and (2) whether that violation was of a clearly established constitutional right. *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Id*. (*quoting Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

### *i.*   **Plaintiff Has Pled a Plausible Constitutional Violation.**

It is undisputed that, at all relevant times, Allen was acting within the scope of his employment as a Gwinnett County police officer.[33] Thus, the burden shifts to Plaintiff to sufficiently plead a clearly established constitutional violation.

The Fourth Amended provides that:

---

[33]   ECF 5, ¶ 8.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Kingsland*, 382 F.3d at 1232. *See also id*. at 1226 ("The existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest."). In a false arrest case, to "receive qualified immunity, an officer need not have actual probable cause, but only arguable probable cause." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [officers] could have believed that probable cause existed to arrest plaintiff." *Id*. (*quoting Kingsland*, 382 F.3d at 1232).

Plaintiff argues, *inter alia*, that Allen violated her Fourth Amendment rights by (1) failing to conduct a reasonable investigation; (2) ignoring clearly contradictory and exculpatory evidence; (3) knowingly or recklessly submitting false information in an arrest warrant; and (4) obtaining such warrant and

arresting Plaintiff for the criminal offense of "theft by deception" without probable cause.[34]

Treating Plaintiff's allegations as true, the Court agrees she has pled a plausible constitutional violation. At a minimum, "officers must investigate objectively and consider all information available to them at the time." *Kingsland*, 382 F.3d at 1229. Allen's alleged bare investigation—consisting of running a generic, worldwide Facebook search for "Asia Smith," picking out Plaintiff from over hundreds of Facebook profiles because her race matched the woman's in the Target surveillance video, and reviewing her Instagram account and driver's license—does not meet this standard. Allen's concession that the "video footage of the female suspect [was] too blurry to clearly distinguish facial features" belies any argument to the contrary.[35] In fact, Allen seemingly understood the need for further investigation, as he admits he "tried to contact Plaintiff directly in an attempt to interview her prior to the issuance of the arrest warrant."[36] When Plaintiff did not immediately answer, Allen decided to trudge ahead and obtain an arrest warrant instead of calling Plaintiff back or pursuing other available

---

[34]   *See generally* ECF 5.

[35]   ECF 10, at 3.

[36]   ECF 7, at 9.

methods to contact her. In other words, it appears that Allen secured an arrest warrant as an alternative means to corroborate Plaintiff's identity. These allegations state a plausible constitutional violation. *Tillman*, 886 F.2d at 320 ("The arrest was for the purpose of determining if she was the twenty-four-year-old person who had sold drugs to the undercover police officer. In other words, the arrest was for the sole purpose of identification."); *Arrington v. McDonald*, 808 F.2d 466, 468 (6th Cir. 1986) (qualified immunity not available when person arrested for purpose of identification).

Plaintiff's allegations regarding the CLEAR investigative report are even more telling. Allen admits he generated and reviewed a CLEAR report for "Ismail Muttalib" as part of his investigation.[37] This report led him to consider Plaintiff as the primary suspect in the Target theft. However, the CLEAR report attached to the Amended Complaint for "Ismail Muttalib" conspicuously lists "Asia Smith" as having been *deceased* since October 5, 2017.[38] Moreover, none of the information in the report listed for "Asia Smith" matches the information Allen collected on Plaintiff Asia G. Smith.[39] For example, the CLEAR report listed "Asia Smith" as a

---

[37]   ECF 7-1, at 3.

[38]   ECF 5-2, at 21.

[39]   *Id*.

41 year-old-woman, whereas Plaintiff was a college student at the time who "appeared to be in her twenties."[40] This contradictory fact should have been evident to Allen, who possessed pictures of Plaintiff, as well as her birthdate and age, from her social media accounts and driver's license.[41] Furthermore, none of the listed addresses for "Asia Smith" matched those collected for Plaintiff.[42]

Allen's response is that Plaintiff "relies only on the 2019 CLEAR report and not on what Detective Allen knew in May 2018 or at the time of his report."[43] That is true; perhaps some discovery will shed some light on this matter. While it is unknown at this juncture whether the information contained in the 2018 and 2019 reports mirrored each other, there is no dispute that both versions of the report contained identifying information for "Asia Smith." During discovery, the parties may be able to ascertain the differences, if any, between the 2018 report Allen generated and relied upon, as opposed to the 2019 report attached to the Amended Complaint, as well as the actions taken (or not) by Allen to confirm Plaintiff's identity and explain away the discrepancies on the report. At this motion to

---

[40]   ECF 5-1, ¶ 14 (*quoting* Allen's investigative report).

[41]   ECF 5-2, at 21; ECF 7-1, at 3.

[42]   *Id.*

[43]   *Id.*

dismiss stage, however, the Court cannot assume that the 2019 CLEAR report creates from whole cloth information concerning "Asia Smith" that was not likewise contained in the 2018 CLEAR report relied upon by Allen.

Treating the Amended Complaint's allegations as true, Plaintiff has pled a plausible violation of her constitutional rights. As alleged, the evidence available to Allen at the time would have caused a reasonable and competent officer to harbor serious concerns regarding Plaintiff's identity and investigate further. This is not a case involving exigent circumstances or where time was of the essence, as the theft occurred more than three weeks before Allen obtained an arrest warrant for Plaintiff. The circumstances simply did not necessitate such a cursory inspection. *Daniels v. Bango*, 487 F. App'x 532, 538–39 (11th Cir. 2012) ("Under the circumstances, [the officer] could have taken a few more simple steps to verify [the plaintiff's] identification. We cannot quarrel with the district court's finding that [the officer] recklessly omitted material information when he did not take additional steps to verify the suspect's identity or include the inconsistencies in his arrest-warrant application to the judge.") (internal citations omitted). Allen's investigation and the information contained in the arrest warrant are insufficient to shield him from liability at this stage. *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("Where it is not evident from the allegations of the complaint

alone that the defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation."); *Lawrence v. W. Publ'g Corp.*, No. 1:15-cv-3341-MHC, 2016 WL 4257741, at *13 (N.D. Ga. June 17, 2016) ("A motion to dismiss based on qualified immunity should be denied if the plaintiff alleges sufficient facts to support a finding of a constitutional violation of a clearly established law.") (*citing Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012)); *Hudson v. City of Atl.*, No. 1:15-cv-0451-WBH, 2015 WL 13427756, at *3 (N.D. Ga. Oct. 27, 2015) ("[T]his Court nonetheless must decline to confer the cloak of qualified immunity upon [the officer] at the motion to dismiss stage. . . . The reasonableness inquiry is necessarily a fact intensive endeavor whereby this Court must view the world from [the officer's] perspective given the knowledge that he had at the time.").

### ii. Plaintiff Has Sufficiently Pled a Clearly Established Right.

For the second prong of the qualified immunity analysis, the Court "must determine whether the right was clearly established such that a reasonable official would understand that what he is doing violates that right." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (*citing Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323,

1327 (11th Cir. 2006)). The Court must look only to United States Supreme Court, Eleventh Circuit, and Georgia Supreme Court precedent to establish if the law, at the time of the violation, provided "fair and clear warning" to a reasonable officer that his or her actions were unconstitutional. *Id*. "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Id*. at 1013 (*citing Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)). To be clear, officers are "not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Coffin*, 642 F.3d at 1015. Instead, "[w]hat matters is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional." *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019) (*citing Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003)).

Plaintiff points to a quartet of Eleventh Circuit cases she claims have clearly established that Allen violated her constitutional rights: *Daniels v. Bango*, 487 F. App'x 532 (11th Cir. 2012);[44] *Kingsland*, 382 F.3d 1220; *Tillman v. Coley*, 886 F.2d 317 (11th Cir. 1989); and *United States v. Kirk*, 781 F.2d 1498 (11th Cir. 1986).

---

[44] Under Eleventh Circuit Rule 36-2, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

It is axiomatic that "a warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997). Indeed, "an officer will not receive qualified immunity if a reasonable officer should have known that the statements in the affidavit were included with a reckless disregard for the truth or that facts were recklessly omitted from the affidavit supporting probable cause." *Daniels*, 487 F. App'x at 537 (*citing Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) ("[T]he Constitution prohibits an officer from making perjurious or recklessly false statements in support of [an arrest] warrant.")).

Plaintiff's cited cases stand for the clearly established principle that an officer recklessly disregards the truth when he "possesses information that would cause a reasonable officer to have serious doubts about the identity of a suspect," after which "the officer is required to either take additional steps to confirm the suspect's identity before submitting the warrant application or include the contradictory information in the warrant application." *Daniels*, 487 F. App'x at 537 (*citing Kingsland*, 382 F.3d at 1229; *Kirk*, 781 F.2d at 1503; *Tillman*, 886 F.2d at 321). With regard to *Kingsland* and *Tillman*, the Eleventh Circuit has emphasized that,

while "both involve a fairly egregious set of facts," the cases have "ostensibly establish[ed] a clearly established right." *Washington*, 939 F.3d at 1246.

Treating the Amended Complaint's allegations as true, Plaintiff has pled a plausible claim that Allen violated her clearly established rights by conducting an inadequate investigation and knowingly or recklessly including false information in the arrest warrant. Allen possessed a bevy of information that would have caused a reasonable officer to question whether Plaintiff was the woman in the Target surveillance video, or the "Asia Smith" listed in the CLEAR report as Muttalib's known associate. That report, alleges Plaintiff, contains clear evidence that Allen's prime suspect—"Asia Smith"—had been dead for seven months by the time the theft occurred. Allen's reliance on "visually match[ing]" Plaintiff to the woman in the surveillance video, based off of "video footage of the female suspect [that was] too blurry to clearly distinguish facial features,"[45] does not warrant dismissal of the Amended Complaint at this preliminary stage.

The alleged material inconsistencies in the CLEAR report, coupled with the alleged deficiencies in Allen's investigation, should have led a reasonable officer to harbor serious doubts as to whether Plaintiff was the suspect on the video

---

[45]   ECF 10, at 3.

footage. Despite these red flags, Allen did not investigate further or include this contradictory evidence in the arrest warrant. Thus, Allen is not entitled to qualified immunity at this point. This does not preclude Allen from re-asserting qualified immunity once the factual record has been developed. *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1285 (11th Cir. 2000) ("We stress, however, that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings) as more facts are developed.").

## IV. CONCLUSION

For the foregoing reasons, Allen's motion to dismiss [ECF 7] is **DENIED**. Pursuant to the Court's prior Order, the parties shall file an amended Joint Preliminary Report and Discovery Plan within 14 days after entry of this Order.[46] Discovery shall also recommence 14 days after entry of this Order.[47]

**SO ORDERED** this the 28th day of February 2020.

Steven D. Grimberg
United States District Court Judge

---

[46]   ECF 22.

[47]   *Id*.